# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Edward Chase

**DEFENDANTS**
Millwood, Inc.

(b) County of Residence of First Listed Plaintiff: Burlington County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Trumbull County, OH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Fernando I. Rivera, Esq., Console Mattiacci Law,
110 Marter Avenue, Suite 502, Moorestown, NJ 08057  215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**TORTS — PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- [x] 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
N.J.S.A § 34:19-1, et seq.

Brief description of cause:
Plaintiff was retaliated against.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 08/26/2021
SIGNATURE OF ATTORNEY OF RECORD: /s/

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDWARD CHASE**<br>21 Dickens Drive<br>Delran, NJ 08075<br><br>*Plaintiff*,<br><br>v.<br><br>**MILLWOOD, INC.**<br>3708 International Boulevard<br>Vienna, OH 44473<br><br>*Defendant*. | **CASE NO.**<br><br><br>**JURY TRIAL DEMAND** |

**COMPLAINT**

### I.   INTRODUCTION

Plaintiff, Edward Chase ("Plaintiff"), brings this action against his former employer, Millwood, Inc. ("Defendant"), for wrongful termination and retaliation in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1 *et seq.* ("CEPA"). After believing that Defendant was misleading and withholding information from OSHA related to a government investigation into a workplace accident and engaging in protected whistleblower activity regarding same, Plaintiff was terminated by Defendant just hours after it learned that Plaintiff intended to communicate directly with OSHA regarding Defendant's misrepresentations and/or omissions and in furtherance of OSHA's ongoing investigation. Plaintiff now seeks damages, including compensatory and punitive damages, his attorney's fees and costs, and all other statutory relief that this Court deems appropriate.

## PARTIES

2. Plaintiff is an individual and a citizen of the State of New Jersey residing in Delran, New Jersey.

3. Defendant is a citizen of Ohio with a principal place of business located at 3708 International Boulevard, Vienna, Ohio.

4. At all times material hereto, Plaintiff worked in Defendant's Sewell, New Jersey location.

5. Defendant is engaged in an industry affecting interstate commerce and, at all times material hereto, has regularly conducted business in New Jersey.

6. At all times material hereto, Plaintiff was an "employee" of Defendant and "whistleblower" as defined by and within the meaning of CEPA.

7. At all times material hereto, Defendant was an "employer" as defined by and within the meaning of CEPA.

8. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment or agency and in furtherance of its business.

## JURISDICTION AND VENUE

9. The cause of action which forms the basis of this action arises under the CEPA.

10. The District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that the Plaintiff and Defendant are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The District Court has jurisdiction over Count I (CEPA) pursuant to 28 U.S.C. § 1332(a).

12. Venue is proper in the District Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS

13. In or around May of 2019, Plaintiff was hired at CORE Erosion Control Services ("CORE") as a Plant Manager.

14. On or about September 4, 2019, Defendant acquired CORE.

15. After Defendant's acquisition of CORE, Defendant retained Plaintiff as a Plant Manager in its Sewell, New Jersey location.

16. As Plant Manager at Defendant, Plaintiff reported directly to Chris Verbosky ("Verbosky"), Regional Manager ("RM"); Verbosky reported directly to Chip Trebcock ("Trebcock"), Owner.

17. Plaintiff's primary responsibilities as Plant Manager at Defendant included training employees on OSHA regulations and supervising employees to ensure compliance with OSHA's guidance and regulations related to the health and safety of employees.

18. During his employment with Defendant, Plaintiff was a dedicated employee who exhibited excellent work performance, including receiving numerous merit-based bonuses and being awarded "Best of Show" due to the performance of his plant.

19. On or about August 6, 2020, an employee of Defendant was involved in a workplace incident, which resulted in the employee being severely injured and admitted as an in-patient at a hospital (the "August 6th Workplace Incident").

20. Upon information and belief, the workplace incident was caused by managerial neglect due to a directive given by Verbosky.

21. According to OSHA Regulation 1904.39(a)(2), all employers are required to notify OSHA when an employee suffers a severe work-related injury.

22. According to OSHA Regulation 1904.39(a)(2), all employers are required to notify OSHA when an employee is admitted to a hospital related to a work-related injury.

23. According to OSHA Regulation 1904.39(a)(2), an in-patient hospitalization related to a work-related injury must be reported within 24 hours.

24. Defendant failed to report the August 6th Workplace Incident to OSHA within the required timeframe and in violation of OSHA Regulation 1904.39(a)(2).

25. On August 7, 2020, Mondell Elliott, Safety Manager, sent an email to several employees, including Plaintiff, confirming that the employee injured during the August 6th Workplace Incident was "in patient admitted" at a local hospital.

26. Upon information and belief, Defendant was cited and fined by OSHA for failing to report the August 6th Workplace Incident in a timely manner.

27. Between August 6, 2020, and August 18, 2020, Defendant actively tried to conceal the August 6th Workplace Incident from OSHA.

28. On or about August 18, 2020, after the injured employee underwent surgery and filed a workers' compensation claims, Defendant finally reported the August 6th Workplace Incident to OSHA.

29. On or about August 25, 2020, OSHA conducted an on-site visit at Defendant and began an investigation into the August 6th Workplace Incident (the "OSHA Investigation").

30. As part of the OSHA Investigation, OSHA requested that Defendant produce, *inter alia*, relevant work logs, witness statements, and allow for a visual inspection of certain equipment.

31. In response to OSHA's request, Defendant asked Plaintiff to collect witness statements from the employees on duty during the August 6th Workplace Incident, which Plaintiff did.

32. As part of the OSHA Investigation, Plaintiff secured witness statements from two eyewitnesses, Victor Cruz ("Cruz") and Michael McAuliffe ("McAuliffe"), which noted Defendant's negligence in how employees were instructed to operate the machinery that caused the injury.

33. The witness statement obtained by Plaintiff from McAuliffe (and given to Defendant) was not provided to OSHA.

34. The witness statement obtained by Plaintiff from Cruz, which required a translation from Spanish to English, appeared to Plaintiff to be materially different than the statement he was given by Cruz.

35. On August 28, 2020, Elliott sent an email to various employees, including Plaintiff, in which he stated that, "OSHA wants to interview [Cruz], so it is best if we know what he is saying before that happens."

36. Upon information and belief, Elliott attempted to get Cruz to change his initial witness statement, and subsequently submitted a second translation of Cruz's statement to OSHA.

37. During OSHA's on-site visit, Plaintiff was instructed by Verbosky to walk employees off of the floor and to leave the job site to avoid them being questioned or speaking with the OSHA investigator.

38. During OSHA's on-site visit, Verbosky attempted to tell Plaintiff what to say to OSHA; Plaintiff cut off Verbosky and objected to telling anything but the truth.

39. Based on, *inter alia*, Defendant's delay in reporting the August 6th Incident; Defendant's failure to provide OSHA with relevant witness statements; Elliott's email regarding Cruz's forthcoming interview with OSHA; Defendant's instructions to Plaintiff regarding what to say to OSHA; and Defendant's instruction to Plaintiff to pull employees off of the job site during OSHA's on-site visit, Plaintiff reasonably believed that Defendant withheld material information from OSHA, was intentionally misleading and/or lying to OSHA, and was attempting to impede the OSHA Investigation for Defendant's personal benefit and gain.

40. On August 31, 2020, at approximately 6:30 a.m., Plaintiff informed Meredith Cheney ("Cheney"), Site Administrator, that he was going directly to OSHA because Defendant was trying to "cover up" the August 6th Incident.

41. On August 31, 2020, at approximately 6:45 a.m., Plaintiff informed his subordinate employees that he was going directly to OSHA to discuss the August 6th Incident and told them to tell the truth to OSHA.

42. On August 31, 2020, at approximately 7:00 a.m., Plaintiff told Edward Evans ("Evans"), Sales Representative, that he was leaving work for the day and asked him to provide coverage for his shift.

43. During the afternoon of August 31, 2020, Cheney told Verbosky and David Stewart ("Stewart"), Head of HR, that, *inter alia*, Plaintiff informed her that Plaintiff was going to OSHA to discuss the August 6th Incident; and that Plaintiff believed that Defendant was requesting employees to change their story regarding the August 6th Incident.

44. Verbosky immediately reported what Cheney informed him about Plaintiff to Elliott and Jason Olander ("Olander"), Regional Safety Auditor.

45. Shortly after Cheney's conversation with Verbosky and Stewart, Plaintiff received phone calls from Verbosky and Adam Engleboch ("Engleboch"), Assistant.

46. On August 31, 2020, at 2:18 p.m. and 2:21 p.m., respectively, Plaintiff communicated with OSHA on his work-issued cell phone to schedule an in-person meeting to discuss information that he reasonably believed was being withheld by Defendant related to OSHA's Investigation.

47. On August 31, 2020, sometime between 3:00 p.m. and 9:15 p.m., Defendant deactivated Plaintiff's work-issued cell phone and access to work emails.

48. On August 31, 2020, on the same day that Defendant learned that Plaintiff was objecting to, and refusing to participate in, what Plaintiff reasonably believed was unlawful conduct, Defendant terminated Plaintiff's employment.

49. On September 1, 2020, at 10:20 a.m., Plaintiff received a call from McAuliffe informing him that Chris Sztenderowicz ("Sztenderowicz"), Regional Sales Manager, announced at a morning staff meeting that Plaintiff was no longer with the company and that Evans was taking over his job as Plant Manager.

50. McAuliffe informed Plaintiff that during the morning staff meeting Verbosky said that he was "putting a rumor to rest and not asking anyone to lie on their statement."

51. After his call with McAuliffe, Plaintiff called another employee at Defendant, Kalief Tyler ("Tyler"), who confirmed that Defendant announced that Plaintiff was replaced by Evans at the morning staff meeting.

52. Plaintiff engaged in protected activity by providing information to OSHA related to the OSHA Investigation.

53. Plaintiff engaged in protected whistleblower activity by disclosing to management and OSHA that he reasonably believed Defendant withheld material information from OSHA, intentionally misled and/or lied to OSHA, and attempted to impede the OSHA Investigation for Defendant's personal benefit and gain, which he reasonably believed was unlawful, in violation of Section 17 of OSHA Act of 1970, and constituted fraudulent and/or criminal activity.

54. Plaintiff engaged in protected whistleblower activity by objecting to and refusing to participate in Defendant's withholding of material information from OSHA, intentionally misleading and/or lying to OSHA, and attempting to impede the OSHA Investigation for Defendant's personal benefit and gain, which he reasonably believed was unlawful, in violation of Section 17 of OSHA Act of 1970, constituted fraudulent and/or criminal activity, and was incompatible with a clear mandate of public policy.

55. Plaintiff's whistleblower activity was a determinative and/or motivating factor in Defendant's retaliatory treatment of Plaintiff, *e.g.*, his termination.

56. By committing the foregoing acts of retaliation, Defendant violated CEPA.

57. As a direct and proximate result of the retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, among other things, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish and loss of life's pleasures, the full extent of which is not known at this time.

58. The retaliatory conduct of Defendant involved upper management's actual participation and/or their willful indifference to the alleged wrongful conduct, warranting the imposition of punitive damages.

## COUNT I
## RETALIATION IN VIOLATION OF CEPA

59. Plaintiff incorporates the above paragraphs as if set forth herein in their entirety.

60. Defendant violated CEPA by terminating Plaintiff after he disclosed, objected to, and refused to participate in unlawful conduct.

61. Defendant violated CEPA by terminating Plaintiff for participating in the OSHA Investigation.

62. As a direct and proximate result of Defendant's violations of CEPA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

63. Members of upper management of Defendant actively participated in or were willfully indifferent to the violations of CEPA, warranting the imposition of punitive damages.

64. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

65. Plaintiff is entitled to all costs and attorney's fees incurred as a result of Defendant's violation of CEPA.

66. No previous application has been made for the relief requested herein.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays the Court to grant the following relief to Plaintiff by:

    (a) Declaring the acts and practices complained of herein to be in violation of CEPA;

    (b) Enjoining and restraining permanently the violations alleged herein;

(c) Awarding compensatory damages to Plaintiff to make Plaintiff whole for past and future lost earnings, benefits and earnings capacity, which Plaintiff has suffered and will continue to suffer as a result of the unlawful conduct by Defendant;

(d) Awarding compensatory damages to Plaintiff for past and future emotional distress, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(e) Awarding Plaintiff costs associated with pursuing his action, together with reasonable attorney's fees;

(f) Awarding Plaintiff punitive damages;

(g) Awarding Plaintiff such other damages as are appropriate under CEPA; and,

(h) Granting any further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

By: */s/ Fernando I. Rivera*
FERNANDO I. RIVERA, ESQ.
110 Marter Avenue, Suite 502
Moorestown, New Jersey 08057
Phone: (215) 545-7676
Direct Fax: (215) 754-4938
rivera@consolelaw.com

Dated: 8/26/2021                                             *Attorneys for Plaintiff*